IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA FOSTER SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  3:04-cv-514-C |
| | ) | (WO) |
| ANTHONY MEADOWS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER ON MOTION**

**I.  Introduction**

On June 23, 2003, the plaintiff Angela Smith was arrested *inter alia* for driving

under the influence and was taken to the Chambers County Detention Facility for

booking.  Even though she made bond, she was placed in a holding cell for a period of

time until the effects of the alcohol decreased.  In the holding cell she lay on a bed,

covered up with a blanket and slept.  In the meantime, Officer Anthony Meadows was

instructed to bring inmate Jason Holloway to the holding area so he could speak to the

sergeant.  Without checking who was already in the cell, Meadows placed Holloway in

the cell with Smith.  After Meadows left the holding cell area, Holloway discovered

Smith was a woman and began to touch her.  Smith jumped up to get away from him and

got to the intercom button which she was able to mash.  Holloway grabbed her legs and

pulled her from the intercom.  Soon an officer got to the cell and took Holloway to

another cell.  Fortunately Smith was not seriously, physically injured, apparently

suffering only bruises to her legs.

Smith filed this action on May 27, 2004, against Officer Meadows individually complaining that he violated her rights secured by the Fourteenth Amendment by his deliberate indifference to a known danger to her.  In addition to this claim, Smith also sought relief under state law, claiming that Meadows' conduct toward her constituted negligence and wantonness, as well as the tort of outrage.  Smith seeks compensatory and punitive damages.  The court has jurisdiction of the federal claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and the state law claims pursuant to its supplemental jurisdiction in 28 U.S.C. § 1367.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This case is now before the court on the defendant's motion for summary judgment.  Upon consideration of the motion, the plaintiff's response and the supporting and opposing evidentiary materials, the court concludes that the defendant's motion for summary judgment on the federal claim should be granted.  The court further concludes that the state law claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## II.  The Summary Judgment Standard

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.  If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists.  *See  Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991);  *see also* FED.R.CIV.P. 56(e).  ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a

---

[1]In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the court stated:

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

3

genuine issue for trial.").  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248 (1986).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 257.  If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.  *See  Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).  However, if there is a conflict in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor."  *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c).  With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III.  Facts

The salient facts are undisputed.  After Smith's arrest and booking in the

Chambers County Detention Facility, she was placed in the middle cell of three holding cells.  An officer in the central control room can observe these cells.

Inmate Holloway was in the main part of the jail on a murder conviction, and he asked to speak to the sergeant.  Officer Meadows was instructed to escort Holloway to the holding cells.  Without checking to see who was already in the holding cell, Meadows put Holloway in the middle holding cell with Smith.  Meadows saw someone in the middle cell "covered up with a blanket."  (Dep. Smith. at 30).  He did not speak to the person and did not ask anyone who was already in the cell. *(Id)*.  After Holloway walked in and sat down in the cell, Meadows "shut the door and went back up." *(Id.* at 33) According to Meadows, about one to one and one-half minutes later,[2] he received a radio call instructing him to return to the holding cell area where he was required to make a report on what he had done. *(Id.* at 36.)

Smith was awakened by Holloway's touching her hair and shoulder.  Holloway told her he had not been around a woman for three years, that he was in jail for the murder of his cousin and her husband "just like I'm fixing to do to you."  (Dep. Smith. at 76) Smith jumped up and was able to "mash the intercom." (*Id.* at 83.)  Unfortunately, no one answered; the guard in central control was talking on the telephone, looking away from the cell. ( *Id.* at 83, 86)  Holloway then hit and grabbed Smith's leg and pulled her away from the intercom.  (*Id.*)  "[H]e nearly knocked me down when he grabbed my leg."

---

[2]The facts are not clear about how long Holloway was in the cell with Smith.  The length of time is not material to the court's decision.

(*Id.* at 89)

> Everything just happened so quick.  And it was, you know, I'm not
> saying Mr. Meadows intentionally put him in there.  You know, I'm not.
> I'm just saying he was in there, and I shouldn't have had to
> experience that.[3]

(*Id.* at 83.)

The guard in the control room then turned, saw what was happening, and called

for another guard to remove Holloway.  Once Holloway was taken from the cell, Smith

tried "to shake it off.  I couldn't believe that it had done happened.  Plus, my leg was

hurting.  Plus, I already had a headache from just being in jail."  (*Id.* at 102)

## IV.  Discussion

Smith contends that the actions of Meadows violated her clearly established rights

secured by the Fourteenth Amendment.  Meadows has asserted his qualified immunity

contending that his "inadvertent" conduct did not violate Smith's constitutional rights

and that he did not violate clearly established law.

As a pretrial detainee, Smith's rights to be free from mistreatment are secured by

the Fourteenth Amendment.  "Claims involving the mistreatment of arrestees or pretrial

detainees in custody are governed by the Fourteenth Amendment's Due Process Clause,

---

[3]Regarding this statement, Smith attempts to ameliorate its effects by arguing that Meadow's intent
is irrelevant, citing *Graham v. Connor*, 490 U.S. 386 (1965) and *Calhoun v. Thomas*, 360 F.Supp.2d 1264
(M.D.Ala. 2005) for the proposition that in determining whether Smith's constitutional rights were violated,
the court should determine whether Meadows' actions were objectively reasonable in light of the totality of
circumstances without regard to Meadows' motive or intent.  *Graham* and *Calhoun* are inapposite because
they are Fourth Amendment cases.  In *Farmer v. Brennan*, 511 U.S. 825 (1994), the court makes very clear
that the deliberate indifference standard incorporate a subjective intent component.

instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Lumley v. City of Dade City, Fla.,* 327 F.3d 1186, 1196 (11th Cir. 2003) (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir.1996)).[4]

> "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment." *Marsh* [*v. Butler County, Ala.*], 268 F.3d [1014] at 1028 [(11th Cir. 2001)]. A Fourteenth Amendment violation occurs when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. *Id.* Furthermore, such risk must be an objectively substantial risk of serious harm to prisoners, and the prison official must respond to that risk in an objectively unreasonable manner. *Farmer v. Brennan*, 511 U.S. 825, 834, 844-845, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

Meadows asserts his qualified immunity in response to Smith's claims.  The Supreme Court has established a two-part approach for the qualified immunity analysis. "The threshold inquiry a court must undertake . . . is whether plaintiff's allegations, if true, establish a constitutional violation." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 735 (2002)).  If a court finds the violation of a constitutional right under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533

---

[4]While there may be some circumstances in which the standards applicable to an Eighth Amendment and a Fourteenth Amendment claim differ, *see Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001), the parties do not suggest in brief and the precedents which the court must follow do not hold that the deliberate indifference standard is in any way different.

U.S. 194, 201 (2001).  Thus, the first task for this court is to determine whether the facts, when considered in the light most favorable to Smith, show that Meadows violated Smith's constitutional rights.

In support of her claim, Smith highlights the following facts:

- Holloway, a capital murderer, told Smith that he was having problems and asked to talk to a shift sergeant.

- Meadows did not inquire about the nature of Holloway's problems.

- Meadows, without handcuffing or restraining Holloway, escorted him to the holding area and put him in the holding cell with Smith.

- Meadows knew there were times when women were placed in the holding cells.

- Meadows knew that jail policy prohibited placing men and women in cells together.

- Meadows knew there was no reason it would ever be all right to put a man and a woman in a cell together.

- Meadows knew putting a man and a woman in a cell together violated Alabama law.

- Meadows put Holloway in the cell "for no particular reason."  (Dep. Meadows. at 28)

- Meadows saw someone covered up with a blanket but did not ask who was in the cell and said nothing to the person already in the cell.

During his deposition, Meadows readily admitted that he made a mistake.

Q.    Can you think of any reason at all that it might be all right to put a man and a woman in the same holding cell.

A.    No, it's not all right.  I just made a mistake.

8

(*Id.* at 36)

Smith may survive the first test, therefore, only if the facts support a finding of deliberate indifference on the part of Meadows.  Deliberate indifference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Thus, it is the equivalent of acting recklessly.  *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).[5] Noting that the term, "recklessness" is not self-defining, the court explained that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38.

Thus, an official must have a subjectively "'sufficiently culpable state of mind.'" *Cottrell*, 85 F.3d at 1491 (quoting *Farmer*, 511 U.S. at 834).  After careful consideration of the facts, the court finds that Smith has not come forward with sufficient facts from

---

[5]*Farmer, supra*, of course, is based on the Eighth Amendment, but for the reasons already discussed, the court will make no analytical distinction between decisions under the Eighth and Fourteenth Amendments.

which a jury could find that Meadows knew she was in the cell and that putting Holloway in the cell exposed her to a known risk of harm.  The court does not doubt that Meadows should have perceived the risk, but Meadows' failure to alleviate a risk about which he should have known but did not know is not a violation of Smith's constitutional rights. The undisputed facts show that Meadows did not do what a reasonable officer would have done under the circumstances.  But that formulation is a classic definition of negligence.  Meadows did not check to see if Smith, lying in bed under a blanket, was a man or a woman.  But for the same reason, there is no evidence from which a reasonable jury could find that Meadows knew he should not put Holloway in the cell.  It is this lack of knowledge which is fatal to Smith's deliberate indifference claim.

## V.  Conclusion

Because the court concludes that the undisputed facts show that Meadows did not violate Smith's constitutional rights, the court need not address whether Smith's rights were clearly established.  Summary judgment on Smith's federal, constitutional claim will be granted.  Pursuant to 28 U.S.C. § 1367(c)(3) the court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction.  The court concludes this is the proper course of action in this case leaving Smith free to bring her state law claims in state court.  Those claims will be dismissed without prejudice.  Accordingly, it is

ORDERED that Meadows' motion for summary judgment on Smith's federal

constitutional claim under the Fourteenth Amendment be and is hereby GRANTED and

that claim be and is hereby DISMISSED with prejudice.  It is further

      ORDERED that all remaining claims be and are hereby DISMISSED without

prejudice.  It is further

      ORDERED that the costs of this proceeding be and are hereby taxed against the

plaintiff for which execution may issue.

      Done this 26th day of August, 2005.


                    _____/s/Charles S. Coody_____
                    CHARLES S. COODY
                    CHIEF UNITED STATES MAGISTRATE JUDGE